## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROSSYVETH REY-BERRIOS<br><br>Plaintiff<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA); MR. JORGE GONZALEZ; MS. ESTHER HERRERA; MR. RAYMOND PALMER; JERRY GRIGSBY; MR. SERGE PHILIPPEAUX; MS. LORRAINE DOBSON; MS. SHELBA BRADLEY<br><br>Defendants | CIVIL NO.: 15-CV-1388(JAF)<br><br><br>ACTION FOR DAMAGES<br>AMERICANS WITH DISABILITIES ACT<br><br><br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

*RECEIVED AND FILED CASHIER*
*2015 APR 13  PM 4: 53*
*CLERK'S OFFICE*
*U.S. DISTRICT COURT*
*SAN JUAN, P.R.*

## COMPLAINT AND JURY DEMAND

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, Rossyveth Rey-Berrios, pro se, and most respectfully **STATES, ALLEGES AND PRAYS** as follows:

### I. INTRODUCTORY STATEMENT

1. Plaintiff brings this action under the Civil Rights Act of 1964, Title VII, Section 717, as amended 42 U.S.C, Sec. 2000e et seq., as well under various Puerto Rico and all pendent actions under N.Y. Exec. Law sec. 292 and sec 296 (1) (a) to (e) et. seq. All applicable New York Labor Laws. All antidiscrimination and retaliation statutes, seeking redress from the

defendant for conduct in the workplace which constitutes harassment, discrimination, and retaliation due to plaintiff opposition against defendant's unlawful employment practices and harassment and discrimination by reasons of origin, sex, and gender.

## II. JURISDICTION

2. This Honorable Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. Section 1331, which gives District Courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

   b.    28 U.S.C. Section 1343 (3) and (4), which gives District Courts jurisdiction over actions to secure civil rights extended by the United States government;  pursuant to The Civil Rights Act of 1964, as amended; The Civil Rights Act of 1991, 42 USC sec 2000e-2000e-17, as amended, from hereinafter "Title VII; section 704 (a) of Title VII; 28 USC secs, 1331, 1343, 2201 and 2202.   The plaintiff also invokes this Court's

   c.    28  U.S.C.  Section  1367,  which  gives  the  District  Court supplemental jurisdiction over state law claims. and seeks relief under Puerto Rico's Law No. 100 of June 30, 1959, PR Laws Ann. T. 29 sec. 146 et seq.; Law 17 of April 22, 1988, 29 L.P.R.A., sec. 155 et seq.; and Law 69 of July 6, 1985, 29 L.P.R.A., sec. 1321, et seq.; and Law Number 115 of December 20th, 1991, 29 LPRA sec. 194 et seq.; and The Equal Pay Act; section 704 (a) of Title VII;

28 U.S.C. secs. 1331, 1343, 2201 and 2202. Also 28 U.S.C. Section 1367, which gives the District Court supplemental jurisdiction over state law claims, and seeks relief under the New York's Labor Laws, N.Y. Exec. Law sec. 292 and sec 296 (1) (a) to (e) et. seq. All applicable New York Labor Laws.

3. Pursuant to Title 28 of the United States Code, Section 1391 (b) venue of this action is proper in this district because the events, acts or omissions giving rise to the claims occurred in this district.

4. All conditions precedent to jurisdiction under Title VII have been complied with.

5. The Plaintiff is a U. S. citizen and resident of the Commonwealth of Puerto Rico, who lacks of economic means at this time to pursue this or any cause of action before a Federal District Court.

6. This action involves a sum in excess of $75, 000.00, exclusive of interest and cost.

7. This is the proper venue to bring this action, since the Plaintiff was hire for duty by FEMA at FEMA Caribbean Area Division (CAD), San Juan, Puerto Rico, on the month of September 2007. The causes of action in this matter arose in New York, Colorado and the Commonwealth of Puerto Rico.

8. The necessary procedural and administrative requirements to bring this action have been satisfied. The Final Administrative Decision was issue on

January 8th , 2015 and which Plaintiff received on January 13th , 2015.  Thus this action is being filed within the applicable 90 day period from receipt of the mentioned Notice of Final Decision.

## II. PARTIES

9.  Plaintiff, At Rossyveth Rey-Berrios, is a resident of the Municipality of Guaynabo, Puerto Rico; and citizen of the United States of America.

10. Defendants. U.S. Department of Homeland Security, Federal Emergency Management Agency (FEMA).    FEMA, which is within the Department of Homeland Security (DHS), is an Executive Agency that serves as a single point of contact within the Federal Government for emergency management activities, dedicated to establishing and maintaining a comprehensive and coordinated emergency management capability designed to support state, tribes, U.S. territories and local governments to prepare for, protect against, respond to, recover from, and mitigate hazards of all types.

11. Co-Defendants, Mr. Jorge Gonzalez, External Affairs Community Relations Manager; Ms. Esther Herrera, Limited English Proficiency Field Group Lead; Mr. Raymond Palmer, Access and Functional Needs Team Lead; Mr. Jerry Grigsby, Needs and Demographics Assistant Manager;  Mr. Serge Philleaux, Access and Functional Needs Field Group Lead;  Ms. Lorraine Dobson, (Equal Rights Advisor ;  and Ms. Shelba Bradley, Equal Rights Advisor.   All co-defendants are FEMA employees and/or managerial personnel that

conspired, supported, aided and abided all retaliatory actions against Plaintiff.

12. Plaintiff demands a jury trial on all causes of action pleaded in this case.

### III. MAIN FACTS

13. Plaintiff demands trial by jury in this action.

14. That on November 12, 2012 plaintiff was assigned by FEMA to work at the Joint Field Office (JFO) at Queens, New York, as it was affected by Hurricane Sandy, as External Affairs Limited English Proficiency and Access Functional Needs team leader. At that time plaintiff was directly assigned by Meredith Parrish, Assistant External Affair Officer for Community Relations Deputy, to mentor Mr. Gerry Grisby, External Affairs Supervisor. At that time Ms. Parrish stated that is was Mr. Grisby's first time at the said position, thus he needed the assistances of Plaintiff.

15. Upon Plaintiff arrival, she was assigned by Ms. Parrish, and by orders of the Bob Jenssen, External Affairs Officer for ESF 15, to work at Coney Island were a Russian Community was being assisted by FEMA personnel as a result of the damages suffered to that community as a direct consequence of the hurricane natural catastrophe which had impacted the northern eastern region of continental USA.

16. At the JFO in Queens, NY, Plaintiff met with another FEMA employee, Mr. Erick Phillipson, also assigned by Bob Jenssen to work at the said site.

17. On November 17th, 2012 at the JFO there was a meeting for the Limited English Proficiency (LEP) personnel where Plaintiff first met Mr. Jorge Gonzalez, External Affairs Community Relations Manager acting at that time as LEP Supervisor.

18. On the above said date and place of work, Mr. Gonzalez had an incident with Plaintiff regarding her functions assigned to her by him (Mr. Gonzalez). Mr. Gonzalez the in a very impolite, disrespectful and threatening manner indicated Plaintiff that if she did not like her job he was able to send her home.

19. Immediately after the above said incident, Mr. Gonzalez started to continuously interfere with Plaintiff assigned responsibilities by retrieving her from the field assigned duties and ordering her to the JFO to perform administrative tasks out of her job assignation and description, in order to assist FEMA employee Ms. Esther Herrera, performing clerical work.

20. At that time, Plaintiff notices that a problematic situation was developing with the communications between the field personnel and the Latin American communities, since Mr. Gonzalez had only assigned male Team Leaders as Team Leaders even though he knew that not of the assignees were bilingual (English/Spanish), a indispensable job requirement of the said position. Because of the before stated field situation, Plaintiff communicated Ms. Herrera that a solution will be to assign the bilingual and qualified FEMA

employees as Team Leaders in consideration of the tasks that needed to be performed at that time.

21. Furthermore Mr. Gonzalez gender discriminatory actions were performed in disregard to the bilingual qualifications; preparedness and readiness of certain female personnel assigned to field at that time, discriminatory decision prevented the impacted or affected Hispanic communities from receiving prompt and adequate FEMA assistance.

22. The plaintiff suggestions, that in order to obtain a better field personnel performance it was needed to promote bilingual personnel to Team Leader, brought resentment from Mr. Gonzalez upon her.   Mr. Gonzalez resentment got inadequate and unprofessional promoting a hostile environment at the work place.   Furthermore, the situation escalated and while Plaintiff was working at one of the assigned headquarters buildings, Mr. Gonzalez approached plaintiff in a very aggressive, impolite and hostile manner by means of unjustified screams at her, supposedly because she was no allegedly authorized to gain access to such JFO building facilities, in doing such actions Mr. Gonzalez inadequately approached her face to face, invading her personal space, to the point of almost becoming a physical aggression.

23. Incident stated before occurred in the presence of other FEMA co-workers, among them Ms. Melody Taylor, who was at that time with plaintiff resolving

computer issues as instructed to do so by immediate supervisor, Ms. Annette E. Robinson, at IT Department at JFO building facilities.

24. As a result of the above stated incident, that same day, December 4th, 2012 Plaintiff filed a confidential formal complaint at FEMA's Equal Employment Office.

25. Plaintiffs FEMA EEO complaint was assigned to Ms. Tammy Todd, by Mr. Scot Clear EEO Director office.  Ms. Todd began an initial confidential investigation by interviewing Mr. Jorge Gonzalez, due to the confidentiality of the investigation the name of the charging party was not revealed by the investigator, but the interviewee indicated to the investigator that he suspected that the charging party could be one of two persons, one of them been the plaintiff.

26. After the initial interviews, the investigator, Ms. Todd, recommended the Plaintiff to eliminate the confidentiality request of the complaint in order to better investigate the same.   In attention to the action requested, Plaintiff informed the investigator that she feared persecution and retaliation in her job by Mr. Gonzalez.   The investigator informed and assured the Plaintiff at that according to EEO regulations, once her identity was revealed to the charged party, she will be protected from further retaliatory actions. Plaintiff then decided to file an official complaint before the EEO, in which her name was to be revealed to charge party and other co-workers.

27. The investigator later facilitated a summary of her investigative findings, first to the charged party, and then to plaintiff.   Such investigative summary corroborated the complaint allegations of Mr. Gonzalez inappropriate conduct, illegal harassment, and discriminatory actions against her. Furthermore, Plaintiff was told by the investigator that when Mr. Gonzalez learn about the investigation results he immediately assumed a very hostile attitude, and even trying to intimidate Ms. Todd, also indicated to her that he was making a record of Plaintiff.

28. Thereafter, Plaintiff learned that Gonzalez knowingly and maliciously had unleashed a retaliatory and derogatory campaign against her by circulating in the work place among other co-workers and managerial personnel that plaintiff was a trouble maker, drug user, mental patient who had also a history of filing EEOC complaints.

29. This retaliatory campaign was further supported by a team of Mr. Gonzalez friends all FEMA managerial personnel assigned to the JFO site, among them Mr. Raymond Palmer (Access and Functional Needs Team Lead), Mr. Julius Gibbons (Field Operations DSA Manager), Mr. Serge Philippeaux (Access and Functional Needs Field Group Lead),  Ms. Ester Herrera (Limited English Proficiency Field Group Lead), and particularly Mr. Jerry Grigsby (Needs and Demographics Assistant Manager) who gave particular instructions to other

Case 3:15-cv-01388-JAF   Document 2   Filed 04/13/15   Page 10 of 21

FEMA supervisors requiring them to keep a close look at all plaintiff actions, since she has filed a complaint against other employees .

30. Mr. Raymond Palmer (Access and Functional Needs Team Lead) ordered Mr. Mr. Dominick Biocchi not to give access to rental or fleet vehicle to Plaintiff under any circumstances for no apparent reason or excuse, furthering the retaliatory actions against Plaintiff.

31. Mr. Julius Gibbons (Field Operations DSA Manager), reassigned Plaintiff to a work group under the command and watchful eye or Mr. Allan Dodson, husband of Equal Right Investigator Loraine Dodson.

32. In regard to the allegation above, we make note the comments of Mr. Grigsby who specifically instructed plaintiffs supervisor Dominick Biocchi to watch plaintiff like a hawk, and that as to her petition for the assignment of a car that they would not provide female workers vehicles, and further declining her request for winter clothing and other needed work materials needed for the job being performed.  Furthermore, as to hours worked by Plaintiff at the time, Mr. Gonzalez refused to pay plaintiff for work performed at the Russian Community site, claiming that plaintiff had not worked as claimed, without conducting an investigation to conclude so when the truth was that she had worked the hours claimed as evidenced by newspaper articles that underscored plaintiffs work at the Coney Island Russian assistance site which also brought resentment from Gonzalez who could not accept that a female

employee was being recognized in lieu of him for the work performed at such site. All in furtherance of the retaliatory actions already taken against Plaintiff.

33. That upon the conclusion of the investigation, a Final Investigation Report was rendered finding that plaintiff had been the subject of disparate treatment and hostile environment due to her sex and further the target of retaliation by FEMA trough its officers and supervisors, considering that the reasons proffered by the supervisory personnel involved appeared to be pre-textual, to wit: That plaintiff did not follow instructions and also on the totality of the testimonial evidence gathered during the course of the investigation conducted by Tammy Todd.

34. The investigative report made by Ms. Todd in regard to the formal complaint related before delivered to Mrs. Pauline C. Campbell, Director Offices of Equal Rights. In the same Ms. Todd concluded that FEMA had failed to take steps to correct the violations perpetrated against Plaintiff.

35. That thereafter, on December 23rd, 2012 a Sunday, plaintiff was summoned by telephone at 7:00 A.M. by Mr. Philippeaux, (Access and Functional Needs Field Group Supervisor) to report to at 8:30am for a supposed meeting of unknown nature and purpose with Ms. Lorraine Dobson and Ms. Shelba Bradley (Equal Rights Advisors, neither assigned to Plaintiff administrative

action ).   Mr. Philippeaux made second call that morning to Plaintiff in, insisting on Plaintiff appearance in the meeting.

36. Ms. Todd was out of town on rotation mode at the time of the unscheduled and dubious meeting, but before hand she had instructed Plaintiff that if something happened in her absence to contact Ms. Jeanne Large at 8th floor the FEMA Equal Rights Office at the JFO.

37. As instructed by Ms. Todd, Plaintiff arrive directly to Ms. Jeanne Large, Equal Rights Advisor, since she was nervous and suspicious of the unscheduled Sunday meeting, that assisted by the unusual insistence of  Mr. Philippeaux requiring Plaintiff presence on the same.  While in meeting with Ms. Large, Ms. Lorraine Dobson (Equal Rights Advisor, not assigned to the administrative action) who suddenly appeared at Ms. Large office interrupted the same requesting the Plaintiff.    The situation caused plaintiff great concern and stress because Ms. Dobson he could not explain to her the reason and nature of the alleged meeting in the presence of Ms. Large.

38. After the interruption mentioned before, Ms. Dobson took Plaintiff to a conference room and she left, leaving Plaintiff with Ms. Shelba Bradley (Equal Rights Advisor) who proceeded to interrogate her about the case.   After a short period of time both (Plaintiff and Ms. Bradley) where rejoined by Ms. Dobson, who this time came with the Plaintiff case file at hand into the room.

39. Ms. Dobson and Ms. Bradley team up in a type of good cop bad cop interrogation on Plaintiff that lasted for couple of minutes until she broke in tears, and questioned both advisors about the nature of that unscheduled meeting in absence of the Ms. Todd, the case investigating advisor. Meeting was immediately terminated at that time. The actions taken by the advisors, as mentioned before, constituted a clear attempt to derail the investigation and/or interfere with the same, by means of inquiring plaintiff behind closed doors about a confidential investigation.

40. The incident stated before caused plaintiff great stress considering that she felt she was being somehow ambushed by persons with no authority to attend her case, suspiciously in the absence of the investigating party, after the investigation officially ended and a report was already produce to the Director of the Office of Equal Rights, Ms. Pauline C. Cambell.

41. Since the filling of the formal complaint, the investigations in course apparently continue, but the administrative DUE PROCESS time terms expired, without any action taken in regard to such complaint by the Agency.

42. AS SOON AS, such Agency's due process terms had expired, Plaintiff invoke her right to obtain a RIGHT TO SUE LETTER, the agency fail to act on such legal petition, in consequence denying the same without a rightful and meaningful excuse, thus UNJUSTFULLY AND ILLEGALLY holding and otherwise denying Plaintiff right of her right to timely seek remedy before a

Federal Court of Law, in what we consider now a pattern of retaliatory actions.

43. The alleged investigation ended with Agency's final decision made on the 8th day of January of 2015, received on January 13, 2015, dismissing all Plaintiff allegations and petitions for relief.

44. Furthermore, since the date that the related complain was filled, during the investigation and even to this date the Agency has acted in retaliation against Plaintiff, denying her of work, thus of income, since April 2013.

45. As a matter of fact, since the filling of the complaint Plaintiff has been call to work in two occasions, the last one on April 2013, almost two years before the filing before this Honorable Court.  Agency actions and/or omissions in retaliation to Plaintiff right to complaint, actions or omissions that constitutes an illegal but effective constructive separation of employment in retaliation thus denying her of a fair due process of law.

46. Furthermore, the last time Plaintiff was activated to work by the Agency on the month of September 2013 in a deployment to the state of Colorado.  At that time the complaint was already filled and before the Agency's Equal Employment Offices consideration, the Agency once again failed to protect Plaintiff by actions and/ or omissions that placed her on duty to work side by side with the complaint charged party Mr. Jorge Gonzalez.  Plaintiff somehow managed to avoid any and all duties that may have exposed her to work

together with the formally charged party and codefendant Mr. Jorge Gonzalez, and as soon as she could, sought relief at the EEO at Colorado FEMA deployment.  The Agency's Equal Employment Offices at Colorado emergency site was unattended at the time the Plaintiff reached the same, only a phone number was provided to reschedule an appointment with the advisor.

47.  Plaintiff acted and called the advisor, giving her name and a meeting was scheduled for the next day.   On the next day Plaintiff was ordered by the Agency to demobilized and order back home.   Never the less, Plaintiff work for only 8 days at that deployment, but charge party and codefendant Mr. Jorge Gonzalez, stood activated and kept working on site by FEMA for over 60 days.

48. The actions and omissions of the Agency on Plaintiff deployment at Colorado site, failed to provide protection to her once again from the charged party situation that cause her great emotional distress and grievance, and she was also unfairly terminated from her deployment, without and justifiable reason.

49. Plaintiff have not been activated for any deployment since the Colorado emergency, even as the Agency has a computerized system call ADD that establish the order that all field personnel will be selected for each job.  The system was established to guarantee FEMA employees equal opportunity and at least 45 days of work per year. All selections are recorded in the system but Plaintiff apparently has not been selected in a period of two years.  This

system is supposed to select by itself and cannot be manipulated; even thou FEMA Directors may have a final word on personnel selection.

50. Actions and/or omissions of the agency clearly demonstrated a pattern of retaliatory actions in its wiliness to penalize and retaliate against the plaintiff who lawfully pleaded for her legal rights at his/her at her place of work in a U.S. Federal Agency.

51. In consequence of the Agency's retaliatory actions and/or omissions Plaintiff have been impaired to procure the necessary income for her sustenance, causing her emotional as well as economic damages.

### A.   FIRST CAUSE OF ACTION:

52. All allegations contained in the complaint are hereby adopted.

53. That as a result of the discriminatory actions and/or omissions conducted by FEMA employees, all co-defendants in this legal action, who subjected plaintiff to disparate treatment and hostile environment by retaliatory actions and/or missions at the place of work, being the sole motivating factor behind such discriminatory practices plaintiffs sex in violation of Title VII of the Civil Rights Act of 1964.

54. That such violation caused plaintiff damages by affecting her emotional health and provoking mental anguish and suffering valued in an amount of not less than $500,000.00.

### B.   SECOND CAUSE OF ACTION:

55. All allegations contained in the complaint are hereby adopted.

56. Codefendant FEMA by it actions and/or omissions fail to protect Plaintiff from its employees here co-defendants in this action, who subjected plaintiff to a pattern of retaliatory actions and/or omissions, being the sole motivating factor behind such discriminatory practices, the filing of an EEO grievance in an attempt to interfere with the exercise of such right by plaintiff as guaranteed by the Civil Right Act of 1964, in violation of Title VII of the Civil Rights Act of 1964.

57. Agency actions and/or omissions in retaliation to Plaintiff right to complaint, actions or omissions that constitutes an illegal but effective constructive separation of employment in retaliation thus denying her of a fair due process of law.   Thus denying Plaintiff work for a period of almost two years, precluding her work income, lost wages that we have estimated in not less than $44,000.00 per year, been that the highest salary received by Plaintiff per year since 2007.   Plaintiff has lost wages in an amount not less than $88, 000.00, due to the Agency's retaliatory actions and/or omissions for the period from April 2013 to April 2015.

58. Actions and/or omissions of the agency clearly demonstrated a pattern of retaliatory actions in its wiliness to penalize and retaliate against the plaintiff that lawfully pleaded for her legal rights at his/her at her place of work in a U.S. Federal Agency.

59. In consequence of the Agency's retaliatory actions and/or omissions Plaintiff have been impaired to procure the necessary income for her sustenance, causing her emotional as well as economic damages.

60. That such violations caused plaintiff damages by affecting her emotional health and provoking mental anguish and suffering valued in an amount of not less than $500,000.00.

61. Plaintiff has lost of back pay and front pay for failing to assign her to any jobs or required periodic trainings as required by FEMA Regulations, which loss is estimated in an amount of not less $100,000.00.

THIRD CAUSE OF ACTION:

62. All allegations contained in the complaint are hereby adopted.

63. That pursuant to pendent jurisdiction, plaintiff claims damages pursuant to a Puerto Rico Torts claim under 31 LPRA Sec. 1802 and Sec. 1803 of the Puerto Rico Civil Code, as a result of the discriminatory conduct to which plaintiff was subjected by FEMA trough its officers and supervisors, FEMA subjected plaintiff to retaliation, being the sole motivating factor behind such discriminatory practices discrimination due to her sex and the filing of an EEO grievance in an attempt to interfere with the exercise of such right by plaintiff as guaranteed by the Civil Right Act of 1964, in violation of Title VII of the Civil Rights Act of 1964.

64. Violations that caused plaintiff damages by affecting her emotional health and provoking mental anguish and suffering valued in an amount of not less than $500,000.00.

FOURTH CAUSE OF ACTION:

65. All allegations contained in the complaint are hereby adopted.

66. Plaintiff further claims punitive damages against defendant for double of the compensatory damages awarded by the Court for all causes of action stated above and before.

## V. PRAYER

**WHEREFORE,** it is respectfully requested from this Honorable Court to take notice of all the aforementioned into consideration and proceed to order Plaintiff be compensated in Damages as prayed for an amount not less than $1,600,000.00 and punitive damages for an amount not less than $10,000,000.00, arising of the gross neglect and capricious conduct incurred in by the co-defendants, jointly and severely, along with any other remedy deemed just and proper.

Plaintiff also prays this Honorable Court for:

1. Enter a declaratory judgment against the defendant, due to violations of the Constitution and Laws of the United States of America and of the Commonwealth of Puerto Rico.

2. Award plaintiff damages in the amount of $300,000.00 for mental anguish, mental and emotional sufferings, distress, and loss of self esteem.

3.     Order the defendant to make plaintiff whole, by ordering damages for loss of income, back pay, front pay, and loss of benefits, in an amount not less than $100,000.00.

4.     Award the plaintiff compensatory damages caused as a result of the illegal actions and omissions in the amount of $300,000.00.

5.     Award the plaintiff punitive damages.

6.     Award the plaintiff compensatory damages.

7.     Award plaintiff double damages.

8.     Award the plaintiff cost of this action, together with reasonable attorney fees.

9.     Award the plaintiff post judgment interest.

10.     Award the plaintiff injunctive relief including but not limited in order to be protected at her job with the codefendant Agency, and such further relief as this Honorable Court deems fair and appropriate.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on this date, I have personally filed this complaint with the Clerk of the Court.

In San Juan, Puerto Rico, at this day, April 13th, 2015.

ROSSYVETH REY-BERRIOS
553 Greenwood Street
Summitt Hills
Guaynabo, PR 00969

*Page 20*

Cell phone: 787.717.3300
Cell phone: 202.538.1325
rrey_dhs@yahoo.com